**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**SHANNON WILKINSON**                                                    **PLAINTIFF**

**V.**                                        **CAUSE NO.**  3:21−cv−451-DPJ-FKB

**GEORGIA PACIFIC WOOD PRODUCTS, LLC**
**and JOHN DOES (1-10)**                                              **DEFENDANTS**

---

**COMPLAINT**
*(Jury Trial Requested)*

---

COMES NOW, the Plaintiff, Shannon Wilkinson, by and through counsel, and files this, her Complaint against the above-named Defendant, and would show unto this Honorable Court as follows:

## I. PARTIES

**1.**      Plaintiff, Shannon Wilkinson ("***Wilkinson***"), is an adult resident citizen of and currently resides in Laurel, Jones County, Mississippi.  Plaintiff, a female, meets the definition of an "employee" under all applicable statutes at all times herein.

**2.**      Defendant, Georgia Pacific Wood Products, LLC ("**GPWP**"), a Georgia corporation doing business in Mississippi at 13218 Highway 28 West, GP Road, Taylorsville, Mississippi 39168.  Defendant, GPWP, may be served with process through its registered agent for process: CT Corporation System, 645 Lakeland Drive, Suite 101, Flowood, Mississippi 39232.

**3.**      Defendants John Does (1-10) are individuals, entities, or agents who are yet unknown to Plaintiff who have or may have liability in the premises as alleged herein. Plaintiff requests this Court to grant leave to amend this Complaint to add these parties when and if they are identified during discovery, and have the Amended Complaint relate

back to the original filing.

## II.  JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343, for the violation of Plaintiff's federal substantive and civil rights. This sexual harassment/retaliation/gender discrimination action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq*. ("***Title VII***"). In addition, this Court has diversity subject matter jurisdiction over Plaintiff's claims as there is complete diversity of citizenship between Plaintiff (Mississippi) and GPWP (Georgia), and the amount in controversy exceeds the jurisdictional limit of $75,000.  This Court has supplemental jurisdiction over the state claims herein under 28 U.S.C. § 1367. This action also arises under the Family Medical Leave Act ("**FMLA**"), 29 U.S.C.A. § 2601, and the Americans with Disabilities Act ("**ADA**"), 42 U.S.C.A. § 12101, *et seq*.

5.      Venue is properly established before the Court pursuant to 28 U.S.C. § 1391 as Plaintiff's claims occurred or accrued in Smith County, Mississippi, which is in the Southern District of Mississippi, Northern Division.

## III.  EXHAUSTION OF REMEDIES

6.      Plaintiff timely filed a Charge of Discrimination against GPWP with the Equal Employment Opportunity Commission, and Plaintiff has received a notice of right-to-sue from the EEOC with regard to this action.  All prerequisites to the filing of this suit have been met and complied with.

## IV.  FACTS

7.      Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 6 above.

[ 2 ]

8.      On or about September 2018, Plaintiff began working for GPWP at its plant located in Taylorsville, Mississippi.  Before the sexual harassment, discrimination, and wrongful conduct at issue, Plaintiff successfully performed her job duties throughout her employment with GPWP, obtained a pay raise, and advanced her career with GPWP. Plaintiff was given benefits along with hourly wages.

9.      On or about September 20, 2019, Micah Allen ("**Allen**") was transferred from another GPWP plant in Roseberg, Mississippi to work in the Taylorsville plant for Defendant as the supervisor of Plaintiff on the utility spray line.  Allen had worked for GPWP before and had numerous grievances filed against him for sexual harassment of female employees, without any penalty.   After beginning work as a supervisor at Taylorsville, Allen began sexually harassing female employees working under him.  This harassment was reported by an employee to the HR department and the employee was fired by GPWP in retaliation.  Allen also harassed two (2) other female employees in the fall of 2019 who didn't report him to HR.

10.     Beginning January 2020, Allen began sexually harassing Plaintiff at work and subjecting Plaintiff to an offensive and sexually hostile working environment.  Allen's sexual harassment against Plaintiff because of her sex/gender during the time period in question (January 2020 to May 2020), and Plaintiff reported same to her supervisors and H.R. representatives (employed by GPWP) include, but not limited to, the following:

*(a)*     Allen's verbal/nonverbal sexual harassment, such as following Plaintiff around and stating sexually offensive comments, e.g. "I bet you were wild when you were young and had sex all the time", "I bet you cheat on your husband", and "I cheat on my wife all the time".  At all times, Plaintiff told Allen to stop, and that Allen's verbal/nonverbal sexual harassment was unwelcomed.

[ 3 ]

(b)     Allen's physical sexual harassment, such as grabbing Plaintiff's breast and
        rubbing his body against Plaintiff in an offensive manner.  At all times,
        Plaintiff told Allen to immediately stop and to not touch her, and that Allen's
        physical sexual touching and groping was unwelcomed.

(c)     Continuous and severe verbal/nonverbal and physical sexual harassment by
        Allen from January 2020 to May 2020, including repeatedly asking to walk
        her to her car at the end of her shift at 11:30 pm and trying to get her to take
        a trip out of town with him and get drunk.

(d)     Allen also asked where Plaintiff lived so he could stop by and see her about
        "unfinished business" and repeatedly texted and called Plaintiff on the phone
        as a part of his wrongful conduct.

**11.**     When the foregoing sexual harassment began and during the time period at

issue (January 2020 to May 2020), Allen's sexual harassment was reported by Plaintiff to

the Safety Manager at GPWP, and she reported Allen's harassment to the Plant Manager

and HR.  GPWP allegedly investigated Plaintiff's complaint and grievance but falsely

reported to Plaintiff that they found no evidence of sexual harassment to support her claim.

GPWP never did anything to prevent or correct Allen's sexual misconduct, which was

allowed to continue unchecked.

**12.**     Plaintiff is not the only female employee to file complaints with or notify

supervisors employed by GPWP about inappropriate sexual harassment directed towards

women by Allen at GPWP.  Before and/or during the relevant time period, at least three (3)

other female employees at GPWP have complained and notified supervisors about Allen's

inappropriate sexual harassment and many others at prior GPWP plants where Allen

worked, and GPWP never did anything to address or rectify it.

**13.**     At all times herein, the sexual harassment by Allen against Plaintiff due to her

female sex/gender (as described herein) was regular and routine, often occurred several

times a week, and was unwelcomed and unprovoked.  Through Allen's unsolicited sexual

harassment and lewd misconduct (both verbal/nonverbal and physical) directed towards Plaintiff, as described herein and/or to be assigned, Plaintiff was subjected to a sexually hostile work environment and sexual harassment that was continuous and pervasive, severe, threatening and humiliating, and unreasonably interfered with Plaintiff's work and her opportunity to succeed at the plant.

14.    During the harassment period at issue, Plaintiff had an opportunity for a promotion but her supervisor, Allen, passed on Plaintiff and chose a much lesser qualified person to promote.  Plaintiff told her supervisor at GPWP about Allen's ongoing sexual harassment towards her and asked her supervisor to remedy the situation since it would get worse if forced to work in such close proximity with Allen.  Finally, after Plaintiff was forced to take off 3 weeks during the alleged investigation of the sexual harassment, Allen was transferred out of Plaintiff's area in July 2020 and promoted to a new management position at GPWP.

15.    The sexual harassment and severe and continuous hostile work environment by GPWP's employees (including Allen) against Plaintiff (as described herein), which GPWP's managers and supervisors were notified about numerous times but failed to ever address or prevent same, rendered Plaintiff's working conditions so intolerable such that any reasonable person would have felt compelled to resign.

16.    From September 2019 to May 2020, Plaintiff and similarly-situated female employees notified and complained to Plaintiff's supervisors with GPWP on numerous occasions about the sexual harassment and abusive workplace environment created by Allen and others, which was open and obvious, yet nothing was done and GPWP failed to reasonably and promptly correct or address the wrongful conduct.  Plaintiff's supervisors

[ 5 ]

excused and aided Allen's behavior, and retaliated against her for reporting the wrongful conduct as set forth above.

17.     Despite the repeated complaints by Plaintiff and similarly-situated female employees, Plaintiff's supervisors failed to ever investigate the allegations with reasonable care, and failed to ever take prompt and appropriate remedial action to prevent or correct the sexual harassment and offensive workplace environment.  Instead, Allen's verbal/ nonverbal and physical sexual harassment against Plaintiff continued and remained ongoing through May 2020.

18.     Plaintiff returned to work in May and June, and Allen was moved to the shipping department.  During the second week in July, Plaintiff became sick and tested negative for Covid-19, but was diagnosed with bronchitis.  Plaintiff reported this serious illness with muscle spasms to HR under the FMLA and to the safety department, and was told not to come back to work until she obtained a "fit for work" form.  After Plaintiff started feeling better, Plaintiff had her physician complete the "fit to work" form and submitted the form to Gay, Safety Director at the plant.  Gay instructed Plaintiff that the medications that she was taking were used to treat multiple sclerosis ("MS") and refused to allow Plaintiff to come off FMLA to her old job because she was a "liability".  Defendant refused to make accommodations to Plaintiff for her job in violation of the ADA.

19.     Plaintiff had a short term disability policy with her union and began receiving checks from the "Carpenter's Industrial Council Trust Fund" for short term disability starting July 17, 2020 at the rate of $395.40 per week until the end of December 2020.

20.     Defendant sent Plaintiff a check for all earned vacation days in October 2020 but refused to allow her to return to work at her job in violation of the FMLA.  In retaliation

for Plaintiff's reporting the above sexual harassment, Defendant violated FMLA and refused to allow Plaintiff to return to work, or make accommodations complaint with the ADA.  In further retaliation, Defendant terminated Plaintiff as an employee effective January 1, 2021.

21.    As a result of Defendant's wrongful conduct and sexual harassment, as described herein, Plaintiff has and continues to suffer severe mental anguish and emotional distress, and past and future lost wages.  Plaintiff has attempted to mitigate her damages but has not been able to find another full time job.

## V.  CAUSES OF ACTION

### Count One
### VIOLATION OF TITLE VII –
### SEXUAL HARASSMENT / HOSTILE WORK ENVIRONMENT/GENDER DISCRIMINATION

22.    Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 21 above.

23.    Plaintiff is a female employee protected under Title VII.

24.    As described herein, from January 2020 through Mid-April 2020, Plaintiff was subjected to sexual harassment (verbal/nonverbal and physical) by GPWP's agents and employees, including by Allen, based upon Plaintiff's female gender/sex.

25.    GPWP's agents and employees' misconduct and sexual harassment, including by Allen, was not welcomed or solicited by Plaintiff.

26.    During the time in question, the unwelcomed sexual harassment and misconduct by Defendant's agents and employees, including Allen, was so severe and/or pervasive that any reasonable person in Plaintiff's position would find that Plaintiff was subjected to a sexually hostile and abusive work environment.

27.    During the time in question, Plaintiff believed that her work environment was

hostile and abusive as a result of the misconduct by Defendant's agents and employees on account of Plaintiff's sex/gender, that was ongoing and unreasonably interfered with Plaintiff's employment.

28.     Plaintiff and similarly-situated female employees complained numerous times to GPWP's supervisors and managers about the foregoing sexual harassment and sexually hostile work environment, and GPWP had actual or constructive knowledge of the ongoing sexual harassment and abusive conduct.  Moreover, the sexual harassment was so pervasive, open and obvious that a reasonable employer would have known or should have known about it, and Plaintiff's supervisors and H.R. representatives (employed by GPWP) were aware of and complicit in allowing the abusive conduct.

29.     GPWP failed to take any prompt and appropriate remedial action to prevent or correct the ongoing sexual harassment and sexually hostile, offensive and abusive work environment against Plaintiff on the basis of gender/sex.  The sexually hostile work environment was continuous and pervasive, severe, threatening, intimidating and humiliating, and unreasonably interfered with Plaintiff's work performance, inhibited her advancement at work, and detrimentally affected her emotional and physical well-being.

30.     As a result of the sexual harassment and sexually hostile work environment due to Plaintiff's female sex/gender, perpetrated by Defendant's employees and agents (including Allen) and aided by Defendant's supervisors and management, Plaintiff's working conditions were unreasonably affected and she sustained employer-sanctioned tangible employment actions that significantly and adversely changed her employment status.  As a result of reporting Allen's sexual harassment as described herein, GPWP's supervisor retaliated against her for informing management of the sexual harassment and

refused to promote her to line operator while promoting several male employees to line operators who were less qualified with less seniority with the Defendant, and Plaintiff was ultimately terminated from her employment.

31.    During the time period at issue, Defendant, by and through its agents and employees (including Allen), subjected Plaintiff to sexual harassment and a hostile work environment, and discriminated against Plaintiff in the terms, conditions and privileges of her employment— all on account of Plaintiff's female sex/gender in violation of Title VII. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has and will continue to suffer severe emotional and economic injuries, resulting in damages in the form of past and future extreme embarrassment, humiliation, mental anguish and emotional distress; past and future lost wages and benefits; lost promotion, job opportunities and pay increases; and other economic and non-economic damages described herein.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial, and all legal and equitable remedies available for violations of Title VII.

32.    Defendant intentionally, wilfully and maliciously perpetrated the foregoing unlawful actions, and/or acted wantonly and with reckless disregard to Plaintiff's right to be free from such unlawful conduct.  As such, an award of punitive damages is also requested.  Pursuant to Title VII, Plaintiff also requests an award of all attorney's fees and costs.

### Count Two
#### VIOLATION OF TITLE VII – RETALIATION

33.    Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 32 above.

[ 9 ]

**34.** During the time period at issue (January 2020 until May 2020), Plaintiff engaged in protected activity by reporting and complaining to Defendant's managers and supervisors on numerous occasions about the subject severe and continuous sexual harassment based on Plaintiff's female sex/gender, as described herein, with a good faith and objectively reasonable belief that the conduct was unlawful under Title VII. Plaintiff further engaged in protected activity by filing/instituting a charge of discrimination with the EEOC against Defendant, by exercising her federally protected rights described herein, and/or by otherwise reporting, opposing and/or complaining about wrongful conduct described herein.

**35.** Defendant, by and through its agents and employees, engaged in adverse employment actions and retaliated against Plaintiff for engaging in protected activity. Such adverse employment actions include, but not limited to, denial of professional advancement; retaliatory harassment and refusing to do anything about the severe and pervasive sexually hostile working environment; terminating Plaintiff; and other retaliatory acts described herein (i.e. violation of FMLA and ADA) and/or to be assigned. The adverse employment actions, ratified and/or approved by Defendant, have materially and adversely changed Plaintiff's overall terms and conditions of her employment.

**36.** A reasonable employee would find Defendant's retaliatory acts materially adverse and such acts would dissuade a reasonable person from reporting or making complaints of sexual harassment or charges of discrimination, and/or refrain from participation with the reporting process.

**37.** Defendant's retaliatory acts and materially adverse actions against Plaintiff were a direct, proximate, and pretextual result of Plaintiff's protected activities.

[ 10 ]

**38.**     Defendant violated Title VII as a result of its unlawful retaliation and wrongful acts against Plaintiff for engaging in protected activity.  As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has and will continue to suffer severe emotional and economic injuries, resulting in economic and non-economic damages described herein.  Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial, and all legal and equitable remedies available for violations of Title VII.

**39.**     Defendant wilfully and maliciously perpetrated the foregoing intentional discrimination, and/or acted wantonly and with reckless disregard to its wrongful actions. As such, an award of punitive damages is also requested.  Pursuant to Title VII, Plaintiff also requests an award of all attorney's fees and costs.

### Count Three
#### SEXUAL ASSAULT / BATTERY
(EMPLOYER LIABILITY)

**40.**     Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 39 above.

**41.**     As the employer of both Plaintiff and Allen, GPWP assisted, aided and abetted and/or facilitated Allen to commit sexual assault and battery against Plaintiff, as alleged herein.  By refusing to take steps to address the ongoing sexual harassment and forcing Plaintiff to remain with Allen as her supervisor, GPWP intended to cause or bring about Plaintiff's apprehension of imminent and immediate harmful and offensive contact with her person, and intended to cause or bring about unwelcomed harmful and offensive contact with Plaintiff's person without her consent.

**42.**     As a result of Defendant's actions, Plaintiff was placed in great apprehension

[ 11 ]

of imminent harmful and offensive contact with her person by Allen during his employment

with GPWP, which Allen attempted with the apparent ability to bring about this harmful

and offensive sexual contact, as described herein.

43.    As a further result of Defendant's actions, Plaintiff sustained unprivileged

sexual contact with her person by Allen during his employment with GPWP, as described

herein, which Plaintiff did not consent to or permit.

44.    As a proximate result of this wrongful conduct, Plaintiff has suffered and

continues to suffer emotional anguish, mental distress, humiliation, and other emotional

and physical damages, and seeks a judgment for all actual damages proximately caused by

this conduct, and an award of punitive damages.

### Count Four
#### NEGLIGENCE
(NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION)

45.    Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1

through 44 above.

46.    At all times material hereto, Defendant, GPWP had a duty to exercise

reasonable and ordinary care in providing non-discriminatory and harassment-free

employment practices and workplace; to take reasonable steps to inquire about and

determine the fitness of its employees; to take appropriate corrective measures to prevent

wrongful behavior or the risk of improper conduct; to refrain from hiring or retaining

employees who pose a harm to other employees; to reasonably ensure that its personnel

were hired, supervised, trained, controlled and retained in a prudent manner; to maintain

a safe and professional workplace; and to comply with Federal statutes.  Defendant, GPWP,

breached its duties owed to Plaintiff and was negligent, as described herein and in the

following respects:

(a)   Failing to provide employment practices that was non-discriminatory and free from harassment.

(b)   Failing to train its employees and supervisors and/or failing to implement reasonably adequate anti-harassment policies and procedures.

(c)   Failing to take reasonable steps to inquire about, investigate complaints of and prevent sexual harassment, and determine the fitness of its employees and agents, including Allen.

(d)   Failing to take any appropriate corrective measures about Allen's inappropriate conduct of a sexual nature when GPWP knew or should have known about Allen's misconduct.

(e)   Failing to adequately retain, train, supervise, and/or control its employees and agents, including Allen.

(f)   Failing to maintain a safe and professional workplace, free from harassment.

(g)   Failing to comply with Federal statutes.

(h)   Others to be assigned.

**47.**   At all times material herein, GPWP knew or should have known of Allen's sexual harassment, unfitness and wrongful conduct towards Plaintiff and similarly-situated female employees during the course of his employment, and/or that Allen held a tendency for such improper behavior during the course of his employment, and presented a danger of harm to Plaintiff and female employees.  Defendant negligently failed to exercise reasonable diligence to prevent, correct or do anything about the foregoing unfitness by Allen while employed by Defendant.  As a direct, proximate and foreseeable result of Defendant's negligence alleged herein, Plaintiff was subjected to ongoing sexual harassment and a hostile work environment, as well as other wrongful and retaliatory misconduct, and Plaintiff sustained and continues to suffer severe emotional anguish, mental distress,

humiliation, and other emotional, physical and economic damages.

**48.**    The above actions constitute negligence and were each a proximate cause of the course of wrongful conduct engaged in, ratified by, known by and/or agreed to by Defendant.  The above negligence by Defendant proximately caused Plaintiff's damages described herein.

**Count Five**
**INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**49.**    Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 48 above.

**50.**    Defendant, GPWP, engaged in, directed, and/or ratified a course of outrageous conduct towards Plaintiff, with the intention to cause or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress.  In addition or the alternative, Defendant, GPWP, knew or reasonably should have known that the wrongful actions at issue would and did proximately result in physical and emotional distress to Plaintiff.  Defendant, GPWP, had a duty to stop engaging in or ratifying and/or prevent the actions herein, but negligently failed to do so in breach of that duty.

**51.**    As a proximate result of this wrongful conduct, whether intentional or negligent, Plaintiff has suffered and continues to suffer emotional anguish, mental distress, humiliation, embarrassment and other emotional and physical damages, and seeks a judgment for all actual damages proximately caused by this conduct, and an award of punitive damages.

**Count Six**
**FMLA - INTERFERENCE/VIOLATION**

**52.**    Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1

[ 14 ]

through 51 above.

53.    The FMLA provides that an employer must provide an eligible employee with up to 12 workweeks of job-protected leave (including 2 paid workweeks) for a serious health condition and for seeking a medical diagnosis. The FMLA also provides an eligible employee with the right to be restored to the same or a comparable position by her employer after taking protected leave.

54.    At all times relevant herein, Plaintiff was an eligible employee on approved medical leave under the FMLA for a serious health condition and for seeking a medical diagnosis.

55.    At all times relevant herein, Defendant was a covered employer under the FMLA. Defendant was both engaged in commerce or in an industry or activity affecting commerce and employed more than 50 employees.

56.    Defendant violated the FMLA and interfered with, restrained, and/or denied Plaintiff's exercise of her rights under the FMLA by, inter alia, interfering with Plaintiff's right to reinstatement, refusing to reinstate Plaintiff to her prior position or an equivalent position, and terminating Plaintiff's employment during her approved FMLA leave.

57.    Defendant did not act in good faith and had no reasonable grounds to believe it was not violating the FMLA. Plaintiff's performance played no role in Defendant's decision to terminate her. Plaintiff was following the orders and direction of her superiors with respect to working and taking medical leave.  Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the FMLA.

58.    As a direct and proximate result of Defendant's wrongful acts, unlawful conduct and violations of Plaintiff's FMLA rights, Plaintiff has suffered damages as

described herein, and is entitled to all legal and equitable remedies available for violations of the FMLA as described herein, pursuant to 29 U.S.C. § 2617(a).

## Count Seven
### FMLA - RETALIATION

**59.**     Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 58 above.

**60.**     The FMLA provides employees with the right to take job-protected medical leave, and the right to be reinstated to the same or an equivalent position after taking protected leave. The FMLA makes it unlawful for an employer to discriminate or retaliate against an eligible employee who exercises her right to protected medical leave.

**61.**     At all times material herein, Plaintiff is an eligible employee and Defendant is a covered employer under the FMLA as provided herein.

**62.**     At all times relevant herein, Plaintiff was on approved medical leave under the FMLA for a serious health condition and for seeking a medical diagnosis.

**63.**     Defendant retaliated and/or discriminated against Plaintiff because she exercised or attempted to exercise her rights under the FMLA by, inter alia, terminating Plaintiff's employment on account of and during her approved FMLA leave, and by refusing to reinstate Plaintiff to her full time position or a reasonably equivalent full time position.

**64.**     A reasonable employee would find Defendant's retaliatory / discriminatory acts to be materially adverse, and such acts would dissuade a reasonable person from exercising or attempting to exercise their FMLA right.

**65.**     Defendant's retaliatory / discriminatory acts and materially adverse actions against Plaintiff were a direct, proximate, and pretextual result of Plaintiff's protected

activities under the FMLA. Plaintiff's performance played no role in Defendant's decision to terminate her. At all times, Plaintiff followed the orders and direction of her superiors with respect to working and taking medical leave.

66.     Defendant did not act in good faith and had no reasonable grounds to believe it was not violating the FMLA. Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under the FMLA.

67.     As a direct and proximate result of Defendant's wrongful acts, unlawful conduct and violations of Plaintiff's FMLA rights, Plaintiff has suffered damages as described herein, and is entitled to all legal and equitable remedies available for violations of the FMLA as described herein pursuant to 29 U.S.C. § 2617(a).

## Count Eight
### ADA VIOLATION - DISABILITY DISCRIMINATION / FAILURE-TO-ACCOMMODATE

68.     Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 67 above.

69.     Plaintiff is a qualified individual with a disability and employee of Defendant, within the meaning of and protected under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12101, *et seq*. Plaintiff suffered from a serious illness and allegedly was diagnosed with  M.S. and muscle spasms.  Defendant also perceived Plaintiff to have a serious disability and impairment that substantially limits one or more of Plaintiff's major life activities, as provided under the ADA.  Plaintiff was qualified, able and willing to perform the essential functions of her position with Defendant despite her actual or perceived disability, or so long as Defendant provided her with reasonable accommodations.

70.     Defendant is a covered entity and employer within the meaning of the ADA,

[ 17 ]

in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Defendant had notice of Plaintiff's actual or perceived disability and her request for reasonable accommodation and/or continued employment opportunities, but failed to provide any reasonable accommodations.

71.     Defendant, by and through its agents and employees, engaged in intentional disability discrimination against Plaintiff on the basis of Plaintiff's actual or perceived disability in regards to her terms, conditions and privileges of employment, including (but not limited to) termination of her employment; failure to reasonably accommodate her actual or perceived disability; denying, excluding or limiting compensation/benefits, privileges/opportunities of employment and advancement to Plaintiff based on her actual or perceived disability and/or Defendant's need to make reasonable accommodations for her actual or perceived disability; and unequal and disparate treatment of Plaintiff in the terms and conditions of her employment that adversely affected her compensation/benefits, advancement, opportunities and status because of her actual or perceived disability. Defendant failed and/or refused to provide reasonable accommodations and continued employment opportunities requested by Plaintiff, and ultimately elected to terminate her without justification under the law.

72.     Defendant's discriminatory actions against Plaintiff on the basis of her actual or perceived disability violated the ADA.  As a direct and proximate result of the aforementioned unlawful conduct by Defendant, Plaintiff suffered and will continue to suffer damages in the form of past and future lost wages and benefits; lost promotional and professional opportunities; lost pay/salary increases and bonuses; neglect, harassment,

[ 18 ]

inconvenience, mental/emotional anguish, exacerbation and/or deterioration of her physical condition and well-being; and other economic and non-economic damages described herein.  Plaintiff is further entitled to all legal and equitable remedies available for violations of the ADA, including an award of all attorney's fees and costs.

### Count Nine
#### ADA VIOLATION - RETALIATION / INTERFERENCE

73.     Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 72 above.

74.     Defendant, by and through its agents and employees, unlawfully retaliated against Plaintiff, and/or harassed, coerced, intimidated, threatened, or interfered with Plaintiff, with regard to her exercise or enjoyment of, or on account of, her rights granted or protected by the ADA, including (but not limited to) requesting a reasonable accommodation, opposing unlawful disability discrimination in the workplace, and/or others to be established.

75.     The actions of the Defendant, by and through its agents and employees, in retaliating against and/or interfering with Plaintiff with regard to requesting a reasonable accommodation and/or for opposing unlawful disability discrimination in the workplace, constituted a violation of the ADA.

76.     As a direct and proximate result of Defendant's unlawful retaliatory employment practices in violation of the ADA, Plaintiff sustained permanent and irreparable harm and harassment, ultimately resulting in the termination of her employment.  As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer damages in the form of past and future lost wages and benefits;

[ 19 ]

lost promotional and professional opportunities; lost pay/salary increases and bonuses; mental anguish and emotional distress; and other economic and non-economic damages described herein. Plaintiff is further entitled to all legal and equitable remedies available for violations of the ADA, including an award of all attorney's fees and costs.

## VI. INJURIES / DAMAGES

**77.** Plaintiff readopts and reasserts all allegations set forth in Paragraphs 1 through 76 above.

**78.** Plaintiff is entitled to an award of attorney's fees and costs, as pursuant to Title VII and other applicable Federal statutory law.

**79.** As a direct and proximate cause of the foregoing conduct of Defendant, Plaintiff suffered, and is entitled to recover from Defendant, the following damages:

*(a)* Past and future lost wages and benefits, including back pay, fringe benefits and other economic damages;

*(b)* Past and future lost promotion and career advancement;

*(c)* Mental anguish and emotional distress, past and future;

*(d)* Loss of enjoyment of life, loss of society, harm to personal and professional reputation, loss of career fulfillment, pain and suffering, humiliation, and embarrassment;

*(e)* Actual and compensatory damages;

*(f)* Incidental and consequential damages;

*(g)* Interest damages as allowed by law;

*(h)* Attorney's fees and costs;

*(i)* Punitive damages; and

*(j)* Other damages set out above and/or to be established.

**80.** Because the conduct by Defendants was intentional, willful, egregious, and/or

[ 20 ]

accompanied with malice, gross negligence, and/or reckless disregard for Plaintiff's rights, Plaintiff is entitled to punitive or exemplary damages to be assessed against Defendants over and above an award of actual damages.

## VII.  REQUESTED RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Shannon Wilkinson, respectfully moves this Honorable Court for a trial by jury and to enter judgment in favor of Plaintiff against Defendants, Georgia Pacific Wood Products, LLC, and John Does (1-10), in an amount as may be determined by the jury to fully compensate Plaintiff for all actual and punitive damages, plus pre- and post-judgment interest, attorney fees and all costs incurred in filing and prosecuting the subject action, and for such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this the 8th day of July, 2021.

**SHANNON WILKINSON** — *Plaintiff*

by:  \_\_/s/ Ken R. Adcock_____
Ken R. Adcock (MSB #1150)
William C. Ivison (MSB #104213)

*of counsel:*  Ken R. Adcock (MSB #1150)
William C. Ivison (MSB #104213)
ADCOCK & MORRISON, PLLC
795 Woodlands Parkway, Ste. 220 (39157)
Post Office Box 3308
Ridgeland, Mississippi 39158
601-898-9887 *Office* | 601-898-9860 *Fax*
kadcock@adcockandmorrison.com
wivison@adcockandmorrison.com